IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAKEEM HENDERSON, | ) | Case No. 4:20-CV-728 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| MICHAEL PHILLIPS, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Our petitioner, Hakeem Henderson; his brother, Michael Austin, Jr.; Raymond Hayes; and Dewaylyn Colvin all participated in a drug distribution ring, which Colvin and Vincent Moorer led.  On November 12, 2011, the four planned and carried out the murder of Adam Christian, with Henderson driving Hayes and Austin to Christian's location where Austin shot and killed him.  A few days later, the four were again together and Austin shot Hayes 18 times for failing to keep quiet about Christian's murder, with the four last seen together in a car Henderson drove.  A Mahoning County, Ohio jury found Henderson guilty of two counts of aggravated murder with firearm specifications and one count of engaging in a pattern of corrupt activity.  *State v. Henderson*, 2018-Ohio-5124, at ¶¶ 3-7 (Ohio App. Nov. 30, 2018); *State v. Henderson*, Case No. 2013-CR-00380-B, Mahoning County Court of Common Pleas.  The trial court imposed an aggregate, indefinite sentence of 33 years to life in prison.  ECF Doc. 9-1 at 509.

Henderson has now filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions and sentences in *State v. Henderson*.  ECF Doc. 1.  Henderson raises five grounds for relief:

> [**GROUND ONE**]: Speedy Trial – This cause involves the Sixth Amendment of the United States Constitution
>
> [**GROUND TWO**]: Prosecutorial Misconduct – This cause involves the rights to due process and fair trial under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution
>
> [**GROUND THREE**]: Prejudicial Joinder – This cause involves the rights to due process and fair trial under the Fifth and Sixth Amendment of the United States Constitution
>
> [**GROUND FOUR**]: Sufficiency – Failure to adduce sufficient evidence violates the Sixth Amendment as it applies through the Fourteenth Amendments of the United States Constitution
>
> [**GROUND FIVE**]: Confrontations Clause/Forfeiture by Wrongdoing – This cause involves the Fifth and Sixth Amendment of the United States Constitution; Right to confront accusor[.]

The respondent warden, Michael Phillips, filed a return of writ.  ECF Doc. 9.  Henderson did not file a traverse.  Because Henderson's claims are procedurally defaulted or meritless, I recommend that Henderson's petition be denied and a certificate of appealability not be issued.

## I.     State Court Proceedings

### A.     Trial Court

#### 1.     Indictment

On April 11, 2013, a Mahoning County grand jury issued an indictment charging Henderson, Colvin and Austin, with the aggravated murders of Christian (Count One) and Hayes (Count Four), in violation of Ohio Rev. Code § 2903.01(A)(F), and three-year firearm specifications under Ohio Rev. Code § 2941.145(A).  *See* ECF Doc. 9-1 at 10-14.  On May 16,

2

2013, a grand jury issued a superseding indictment as to all three defendants, but the charges against Henderson remained the same.  *See* ECF Doc. 9-1 at 15-20.

### 2.  Pretrial Proceedings

On December 7, 2013, Henderson was arrested.[1]  On December 10, 2013, Henderson was appointed counsel, arraigned, and pleaded not guilty.  ECF Doc. 9-1 at 21.  On December 17, 2013, Henderson requested all applicable discovery, and the state provided a bill of particulars. ECF Doc. 9-1 at 22-28.

On December 26, 2013, Henderson's counsel requested the appointment of co-counsel. ECF Doc. 9-1 at 37.  On December 30, 2013, the trial court, on Henderson's motion, continued his trial, scheduled a pre-trial conference for January 13, 2014, and granted him leave until January 7, 2014 to file motions for relief from prejudicial joinder and requesting an evidentiary hearing on the admissibility of co-conspirator's statements.  ECF Doc. 9-1 at 40.  On January 6, 2021, the trial court granted Henderson's request for co-counsel.  ECF Doc. 9-1 at 39.

On January 7, 2014, Henderson moved to sever his case from his co-defendants and sever the aggravated murder charges from each other.  ECF Doc. 9-1 at 41.  Simultaneously, Henderson moved for an evidentiary hearing on the admissibility of co-conspirators' statements, specifically out-of-court statements by Colvin and Austin.  ECF Doc. 9-1 at 48, 50.  The State of Ohio opposed Henderson's motion to sever.  ECF Doc. 9-1 at 54.

On January 13, 2014, the trial court granted Henderson's motion for a hearing on the admissibility of his co-conspirators' statements and set a hearing on the motion to sever for March 28, 2014.  ECF Doc. 9-1 at 76.  The trial court also noted that Henderson's speedy trial time would toll while his motions were pending.  ECF Doc. 9-1 at 76.

---

[1] *See State v. Henderson*, 2018-Ohio-5124, ¶ 64; ECF Doc. 9-1 at 662 (docket sheet identifying date of arrest).

3

On March 12, 2014, Henderson moved to have video evidence transcribed, which the trial court granted on March 17, 2014. ECF Doc. 9-1 at 77; *see* ECF Doc. 9-1 at 658.

On March 28, 2014, the trial court held a hearing on Henderson's motion regarding the admissibility of co-conspirators' statements and denied the motion, ordering the State to provide the trial court any statements or confessions by Henderson it intended to enter into evidence, prior to the court ruling on Henderson's motion to sever. ECF Doc. 9-1 at 78-79. The trial court noted Henderson's speedy trial time was tolled. ECF Doc. 9-1 at 79.

On April 11, 2014, the State moved to file a sealed notice of compliance in providing hearsay statements and filed a memorandum in opposition to Henderson's motion to sever. ECF Doc. 9-1 at 83-92, 659. On May 1, 2014, the trial court granted *Colvin's* motion to sever his case from that of Austin and Henderson. ECF Doc. 9-1 at 82. The same day, the court scheduled a pre-trial hearing for June 11, 2014. ECF Doc. 9-1 at 81.

On June 13, 2014, following a pre-trial conference, the trial court granted the State leave until June 16, 2014 to supplement its notice of intention to use co-conspirator statements at trial ("notice of intent"), granting Henderson leave until June 30, 2014 to respond to the state's supplement, and scheduling a pre-trial hearing for July 18, 2014 and Henderson's and Austin's trial for September 8, 2014. ECF Doc. 9-1 at 94-95.

On June 17, 2014, the State filed its supplement to its notice of intent, including additional statements. ECF Doc. 9-1 at 96-115. On June 30, 2014, Henderson moved for an extension of time to respond to the State's notice of intent until July 14, 2014, which the trial court granted. ECF Doc. 9-1 at 119-121. On July 18, 2014, following a pre-trial hearing, the trial court granted Henderson until July 25, 2014 to respond to the State's notice of intent and converted Henderson's trial on September 8, 2014, to a hearing on the State's notice. ECF

Doc. 9-1 at 122.  The September 8, 2014 hearing was later continued until September 22, 2014, without objection by Henderson.  ECF Doc. 9-1 at 123-124.

On August 4, 2014, Henderson responded to the State's notice of intent, which the State replied to.  ECF Doc. 9-1 at 125-143, 662.  On September 19, 2014, the trial court cancelled the hearing for September 22 and, with counsels' agreement, tolled Henderson's speedy trial time until the court had time to review the evidence regarding the hearsay statements at issue.  ECF Doc. 9-1 at 145-146.

On November 19, 2014, the trial court continued a hearing originally scheduled for November 17, 2014 until December 17, 2014, due to Henderson being unavailable.  ECF Doc. 9-1 at 147.  Further, at the hearing, the trial court noted that, with the parties' agreement, Henderson's right to a speedy trial was tolled as the court considered the DVDs containing the hearsay statements the State wished to use at trial.  ECF Doc. 9-1 at 145-146.

On December 12, 2014, the State provided a supplement to its notice of intent.  ECF Doc. 9-1 at 148.  On December 22, 2014, the trial court held a pre-trial hearing and scheduled another hearing for January 21, 2015.  ECF Doc. 9-1 at 153.

On January 27, 2015, the trial court granted Henderson's motion to sever his trial from Austin's but overruled his motion to sever the trial of his murder charges.  ECF Doc. 9-1 at 154. The trial court also held a pre-trial hearing, scheduled another for February 9, 2015, and set the trial for February 17, 2015.  ECF Doc. 9-1 at 155.  On February 9, 2015, the State filed two supplements to its notice of intent containing proffers by State witnesses.  ECF Doc. 9-1 at 156-173.

On February 11, 2015, Henderson moved to voir dire the State's hearsay witnesses.  ECF Doc. 9-1 at 175.  The same day, the trial court held a pre-trial hearing and ordered that the trial,

scheduled for February 17, 2015, be continued, noting that Henderson's motion to voir dire tolled time for purposes of his speedy trial rights. ECF Doc. 9-1 at 180. Another pre-trial hearing was scheduled for March 18, 2015, during which the trial court overruled Henderson's motion to voir dire and set the case for trial on June 1, 2015. ECF Doc. 9-1 at 180-181.

On April 14, 2015, the trial court modified its ruling on the State's notice of intent, finding that, based on the State's supplements, all but three of the contested statements were admissible against Henderson as statements by a co-conspirator. ECF Doc. 9-1 at 182-187. On April 21, 2015, the trial court held a pre-trial hearing on Austin's case alone and addressed Henderson's motion to sever defendants and counts. ECF Doc. 9-1 at 194. The trial court rejoined the two cases for trial, granting the motion in part and denying the motion in part by severing all the counts unrelated to Henderson except Counts 3 and 6 against Austin for possessing a firearm under disability in relation to the murders of Christian and Hayes; the trial court scheduled the joint trial for June 1, 2015. ECF Doc. 9-1 at 194.

On May 8, 2015, Henderson objected to the trial court's rejoinder of Austin. ECF Doc. 9-1 at 188. The same day, Henderson moved for the production of exculpatory material. ECF Doc. 9-1 at 196. On May 18, 2015, during a pre-trial hearing, the trial court sustained Henderson's objections to the rejoinder of Austin and again severed the trials. ECF Doc. 9-1 at 199. Henderson's trial remained scheduled for June 1, 2015. ECF Doc. 9-1 at 199.

### 3. Second Superseding Indictment

On May 21, 2015, the grand jury issued a second superseding indictment against Colvin, Austin, and Henderson, and added charges against Vincent Moorer, Melvin Johnson, Jr., and Nahdia Baker, who were also alleged members of the drug distribution organization. ECF Doc. 9-1 at 200-201. The grand jury added to Henderson's charges, additionally charging him

with the aggravated murders of Ryan Slade (Count 10) and Keara McCullough (Count 11), related firearm specifications; possession of heroin (Count 13); possession with the intent to distribute (Count 14); and participation in a pattern of corrupt activity (Count 29) . ECF Doc. 9-1 at 204-205, 211.  Henderson was arraigned and pleaded not guilty.  ECF Doc. 9-1 at 216.

On June 3, 2015, the parties agreed to continue Henderson's trial, and a pre-trial hearing was set for July 27, 2015.  ECF Doc. 9-1 at 217.  On June 23, 2015, Henderson's counsel filed a notice of potential conflict of interest.  ECF Doc. 9-1 at 218-219.  On June 26, 2015, the trial court held a hearing on the potential conflict and "relieved" both attorneys from representing Henderson.  ECF Doc. 9-1 at 221.  On July 22, 2015, the trial court appointed Henderson new counsel and scheduled a pre-trial hearing for July 27, 2015.  ECF Doc. 9-1 at 222.

On July 24, 2015, the State moved to continue Henderson's trial due to a scheduling conflict.  ECF Doc. 9-1 at 223.  On July 31, 2015, Henderson *pro se* requested that his retained counsel be appointed, which the trial court granted.  ECF Doc. 9-1 at 224-226.  With the parties' agreement, the trial court scheduled a pre-trial hearing for August 27, 2015 and trial for January 19, 2016.  ECF Doc. 9-1 at 226.  The trial court noted that Henderson's speedy trial rights were tolled until the trial.  ECF Doc. 9-1 at 225.

On July 31, 2015, Henderson, *pro se*, moved for a bill of particulars and for disclosure of due process materials.  ECF Doc. 9-1 at 227, 229.  On October 30, 2015 and November 16, 2015, the State filed a third and fourth supplement, respectively, to its notice of intent to use various hearsay statements.  ECF Doc. 9-1 at 233, 240.

On November 16, 2015, the trial court held a pre-trial hearing.  ECF Doc. 9-1 at 244. Based on the additional hearsay statements the State provided, the trial court severed the trials of

7

Austin and Henderson from the other defendants and scheduled a joint trial for them on January 19, 2016 on the aggravated murders of Christian (Count 1), Hayes (Count 4), Ryan Slade (Count 10), and Keara McCullough (Count 11); Henderson's drug-related charges (Counts 13 and 14), and the pattern of corrupt activity charge (Count 29). *See* ECF Doc. 9-1 at 244-249. On December 22, 2015, the trial court permitted the addition of the attempted murder or, in the alternative, assault counts (Counts 7 and 8) solely against Austin to be tried in their joint trial. ECF Doc. 9-1 at 250-251.

On December 23, 2015, Henderson moved to dismiss the counts against him for violation of his speedy trial rights, arguing that the motions and continuances by the defense should not have tolled his speedy trial time. ECF Doc. 9-1 at 254-259. On January 6, 2016, the State opposed Henderson's motion to dismiss. ECF Doc. 9-1 at 386.

On January 11, 2016, the trial court held a pre-trial hearing, during which a motion to continue, which Henderson concurred with, was granted and the trial was continued until February 16, 2016. ECF Doc. 9-1 at 395. On January 19, 2016 and February 9, 2016, the State provided additional discovery to Henderson. ECF Doc. 9-1 at 396-403. On February 12, 2016, the trial court held a pre-trial hearing and denied Henderson's motion to dismiss the indictment. ECF Doc. 9-1 at 405. The trial court set a discovery cut-off deadline of March 4, 2016 and granted Henderson's motion to continue the trial, setting it for April 25, 2016. ECF Doc. 9-1 at 405-406. On February 18, 2016, the state provided additional discovery to Henderson. ECF Doc. 9-1 at 407.

On March 14, 2016, Henderson moved to suppress or bar the admission of an alleged dying declaration. ECF Doc. 9-1 at 409. While the motion was pending, the State filed various motions in limine and Henderson moved again to dismiss his indictment for speedy trial

violations, arguing that the trial court's delay in ruling on his motion to sever was in violation of the state speedy trial statutes and his federal rights. ECF Doc. 9-1 at 422-442, 464. The parties opposed each other's motions. ECF Doc. 9-1 at 473, 488-492. The trial court overruled Henderson's suppression motion and ruled on or took under advisement the remaining motions, including Henderson's motion to dismiss. ECF Doc. 9-1 at 493-494.

On April 15, 2016, Henderson moved to bar any reference to prior inconsistent statements and filed a notice of alibi. ECF Doc. 9-1 at 495-500. On April 19, 2016, the State provided additional discovery. ECF Doc. 9-1 at 501. On April 20, 2016, Henderson moved for a discovery order, ordering the state to supply the names and content of the statements of witnesses it intended to present to refute Henderson's alibi. ECF Doc. 9-1 at 503-504.

On April 21, 2016, the trial court denied Henderson's motion to dismiss the indictment on speedy trial grounds. ECF Doc. 9-1 at 505-507.

### 4. Trial

On April 25, 2016, the case proceeded to trial. The evidence presented at trial, as described by the Ohio Court of Appeals, was as follows:

{¶ 3} The jury trial against Appellant and Austin commenced on April 25, 2016. There was testimony outlining the structure of a drug distribution organization run by Colvin and Moorer, including testimony by former members of the organization. [ECF Doc. 9-2 at 441, , 456, 1165-1170, 1182 184, 1195, 1296]. Appellant, Austin, and Hayes were described as enforcers, hitters, or shooters. [ECF Doc. 9-2 at 466, 793-795, 803, 807-809, 1202, 1301-1302, 1311-1314, 1331]. A participant close to Moorer testified the organization made a "couple hundred thousand" dollars a month. [ECF Doc. 9-2 at 1297]. He explained Appellant's role was often the driver as Appellant had a license and insurance, noting a police officer would be more likely to search a vehicle during a traffic stop if the driver was unlicensed and uninsured. [ECF Doc. 9-2 at 1313-1314].

{¶ 4} A female resident of a housing project on the east side of Youngstown known as "Victory Estates" testified Adam Christian was visiting her apartment on November 12, 2011. They consumed pills and marijuana. [ECF Doc. 9-2 at 592]. Her cousin, R'Amel Hayes, called her multiple times to inquire who was

9

at her apartment. [ECF Doc. 9-2 at 563]. Hayes later arrived at the apartment and spoke to Christian about helping Hayes get his gun unjammed. [ECF Doc. 9-2 at 569-570]. Around this time, Christian exited the back door and went outside to vomit, followed by Hayes. [ECF Doc. 9-2 at 571]. The female resident heard gunshots. When she went to her back door, Hayes was outside holding the door so she could not exit, and she argued with him. [ECF Doc. 9-2 at 576, 597]. Upon looking out her window, she saw Christian lying on the ground. After Hayes released her door, she went outside where she saw Christian bleeding. Hayes left, and she asked the dying victim whether Hayes did this to him. She testified Christian shook his head to answer in the negative, she asked who did shoot him, and he answered, "Mike," at which point he spit out blood and did not speak again. [ECF Doc. 9-2 at 580, 599].

{¶ 5} This witness was thereafter heard yelling that Mike Austin was the shooter as others arrived to assist the victim; this was heard over a 911 call as well. [ECF Doc. 9-2 at 641]. A bystander who heard her yelling testified she noticed Austin at the housing project earlier in the day with two others; all three were wearing all black and hoodies on a warm day. [ECF Doc. 9-2 at 626-627]. Later that night, this bystander saw Austin and another person outside of the targeted apartment; she believed Austin was armed due to a bulge she spotted in his jacket. [ECF Doc. 9-2 at 636].

{¶ 6} Just prior to the shooting, Christian's aunt arrived at the housing project and called 911 because she saw two young men walking on the street with guns, wearing all black with hoodies. [ECF Doc. 9-2 at 520-521]. After a police car circled and left, she called again to report she then saw them stand by an apartment before splitting up, with one going to the front and one going to the back. [ECF Doc. 9-2 at 524-525]. She thereafter heard gunshots. Christian died before the police arrived. Four bullets were recovered from his body. The shot to his face occurred from a very close range. [ECF Doc. 9-2 at 1447].

{¶ 7} Days after this homicide, the body of R'Amel Hayes was found at an intersection on the east side of Youngstown. [ECF Doc. 9-2 at 732, 753]. He had been shot 18 times. [ECF Doc. 9-2 at 1483]. An inmate testified Austin started talking to him in jail after learning of the inmate's paralegal background. This inmate said Austin admitted he committed the Christian murder, explaining Appellant drove and Hayes went in to lure the victim outside. [ECF Doc. 9-2 at 794-795]. Austin expressed he had to kill Hayes because it appeared Hayes was talking too much about the Christian murder. [ECF Doc. 9-2 at 803-805]. According to the inmate, Austin said Appellant drove with Colvin in the front seat and Austin in the backseat next to Hayes; Austin then shot Hayes and kicked his body out of the vehicle. [ECF Doc. 9-2 at 804-805].

{¶ 8} During trial, a key state's witness refused to appear to testify. A hearing was held to determine whether the statements of this organization member who sold drugs for the organization could be used at trial under the forfeiture by

10

wrongdoing exception to the hearsay exclusion and to the confrontation clause. The court overruled objections by the defense, allowing the admission of a video of the witness's February 26, 2013 statement to police and the testimony of a detective about his transcribed follow-up interview with this witness on February 4, 2015.

{¶ 9}  Regarding the Christian murder, this witness said he was at his house with his brother when Appellant arrived with Colvin, Austin, and Hayes.  They asked for masks as they were going to Victory Estates to "take care of" whatever Christian they could find as they heard a member of the Christian family was planning to rob Colvin.  [ECF Doc. 9-1 at 330; ECF Doc. 9-2 at 1122-1123].  He said Appellant, Austin, and Hayes all made statements in agreement with the plan voiced by Colvin.  [ECF Doc. 9-2 at 1123-1126].  This witness testified the group left with Appellant driving.  [ECF Doc. 9-1 at 335; ECF Doc. 9-2 at 1125].  They returned to the witness's house later (without Hayes).  Austin announced he shot a Christian but did not know which one he shot as they looked alike.  [ECF Doc. 9-1 at 341, 343, 349-350; ECF Doc. 9-2 at 1125, 1127].  This witness and his brother then provided Appellant and Austin with a house to stay at in Boardman.  They told the witness there had been a $10,000 price set for the hit so they went over and "served these dudes" and "put some work in" (meaning they shot or killed someone).  [ECF Doc. 9-1 at 344-345; ECF Doc. 9-2 at 1128].

{¶ 10}  This witness said the defendants then planned to kill Hayes because he did not keep quiet about the Christian murder.  [ECF Doc. 9-1 at 362-363].  On the day Hayes was last seen, this witness saw Hayes in a vehicle with Colvin and Austin being driven by Appellant.  [ECF Doc. 9-1 at 363-364].

{¶ 11}  Later while high, Austin told this witness how both murders proceeded. [ECF Doc. 9-2 at 1130].  As for the Christian murder: Colvin and Appellant dropped off Austin and Hayes; Hayes went in the apartment to lure Christian outside; Christian was vomiting outside; and Austin shot Christian.  [ECF Doc. 9-1 at 353-356].  As to the Hayes murder, Austin told the witness: Hayes kept telling Austin he loved him as if he suspected Austin's plot against him; Austin shot Hayes; and Colvin vomited and ran.  [ECF Doc. 9-1 at 363-369, 372].

{¶ 12}  This witness heard Austin express anger that no funds were paid as expected for the Christian murder.  [ECF Doc. 9-1 at 373-374].  Another organization member testified he heard Appellant and Austin complaining they never received payment for various hits; Appellant said they were supposed to "come in, pull [our] moves, get paid and go back and leave town."  [ECF Doc. 9-1 at 1301-1311].

{¶ 13}  As to the attempted murder and felonious assault charges against Austin, the victim of a shooting testified.  He told police Austin was the shooter and theorized it may have been revenge for his involvement in a burglary of the apartment of Moorer's girlfriend.  [ECF Doc. 9-1 at 1020-1028].  An organization

member who was close to Moorer testified Moorer gave Austin the gun to use for this purpose.  [ECF Doc. 9-1 at 1320].

{¶ 14}  As to the Slade and McCullough murders, there was testimony from a member of the organization that Moorer ordered the shooting of Ryan Slade because Slade assaulted Moorer's girlfriend, who was also a member of the organization; Keara McCullough happened to be in the vehicle with Slade at the time of the shooting.  [ECF Doc. 9-1 at 1182-1184].  Two other members of the organization confirmed this and testified Austin admitted killing these two victims.  [ECF Doc. 9-1 at 1202, 1307].

{¶ 15}  During trial, the court entered an acquittal on the possession and trafficking charges.  The jury found Appellant guilty of two counts of aggravated murder with firearm specifications for the deaths of Christian and Hayes and guilty of engaging in a pattern of corrupt activity with the sentencing enhancement.  The jury found Appellant not guilty of aggravated murder or the lesser included offense of murder for the deaths of Slade and McCullough.

*State v. Henderson*, 2018-Ohio-5124, ¶¶ 3-15 (7th Dist. Ct. App.); ECF Doc. 9-1 at 580-584.

## 1.    Sentencing

On May 11, 2016, the trial court held Henderson's sentencing hearing.  ECF Doc. 9-1 at 508-510; *see* ECF Doc. 9-3.  The trial court sentenced Henderson to a term of life in prison with parole eligibility after 30 years on each aggravated murder charge, to be served concurrently, but consecutive to two, concurrent 3-year terms on the firearm specifications, and a concurrent 11-year term on the pattern of corrupt activity charge.  The aggregate sentence was life in prison with parole eligibility after 33 years.  ECF Doc. 9-3 at 25-26, 508-510.

The same day, Henderson filed a notice of appeal of his conviction and sentence.  ECF Doc. 9-1 at 512.  On June 17, 2016, the record of Henderson's pre-trial and trial proceedings was filed with the Ohio Court of Appeals.  ECF Doc. 9-1 at 698.  On September 6, 2016, the transcript of Henderson's sentencing hearing was filed with the Ohio Court of Appeals.  ECF Doc. 9-1 at 699.

### 2.    State Petition to Vacate

On June 27, 2017, Henderson filed a *pro se* petition to vacate or set the judgment of

conviction and sentence aside and the state moved for judgment on the pleadings.  ECF Doc. 9-1

at 694.  On October 5, 2017, the court denied the petition to vacate.  ECF Doc. 9-1 at 643.

### 3.    Direct Appeal

Following numerous extension requests, Henderson timely filed a merits brief on January

10, 2018.  ECF Doc. 9-1 at 513, 700-707.  In it, he raised five assignments of error:

1. Sixth Amendment Confrontation: As its first assignment of error, the defense
   posits that the trial court erred in allowing in un-cross-examined testimonial
   hearsay, such being the only evidence implicating Henderson, in violation of
   the Sixth and Fourteenth Amendments.  At issue, relative to this assignment of
   error, under U.S. Law, the forfeiture exception to the confrontation clause
   applies only when a defendant prevented a witness from testifying.  Here,
   nothing implicated Henderson in wrongdoing, yet the court applied the
   exception.  []

2. Prejudicial Joinder: As its second assignment of error, the defense offers that
   the trial court erred in denying its various motions for relief from prejudicial
   joinder.  At issue, under U.S. and Ohio law, if trial with a co-defendant
   prejudices a defendant, then a court must order separate trials.  Here, the trial
   court declined to order separate trials, despite obvious prejudice to defendant-
   Henderson.  []

3. Sufficiency: As its third assignment of error, the defense posits that sufficient
   evidence did not support the conviction in this case.  At issue, in a murder-by-
   complicity trial, if the state proves only that a defendant was "present," then
   the evidence is insufficient to support the indictment, and a trial court must
   dismiss the cause.  Here, the state proved only presence.  []

4. Speedy Trial: As its fourth assignment of error, the defense asserts that the
   government failed to bring Henderson to trial timely in violation of his Sixth
   and Fourteenth Amendment rights to speedy trial and under the deadline of
   R.C. 2945.73.  At issue, under R.C. 2945.73, if the government fails to bring a
   defendant to trial within 270 days of her date of arrest, then a prosecution
   must be dismissed for failure of speedy trial.  Here, the government failed to
   bring Hakeem to trial within 270 days.  []

5. Cumulative Error: As its fifth assignment of error, the defense asserts that
   Multiple instance of error, combined, caused reversible error in Hakeem's

13

case.  At issue, if a reviewing court finds each of several errors non reversible individually, a court will reverse if the errors combined resulted in an unjust trial.  In this case, even if each of the foregoing errors is not reversible, the errors combined created a manifest miscarriage of justice.  []

ECF Doc. 9-1 at 518-520.  The state filed an appellee brief.  ECF Doc. 9-1 at 537.

By a decision and journal entry filed on November 30, 2018, the Ohio Court of Appeals overruled Henderson's assignments of error and affirmed his judgment of conviction and sentence.  ECF Doc. 9-1 at 579, 607.

### 4.    Application for Reconsideration

On December 17, 2018, Henderson applied for reconsideration of the Ohio Court of Appeals' decision, specifically on the issue of "whether there must be *some* evidence of a defendant's knowing participation in an alleged conspiracy to prevent a witness' testimony in order for the forfeiture by wrongdoing exception to the Sixth Amendment to apply."  ECF Doc. 9-1 at 608 (emphasis in original).  The state opposed reconsideration.  ECF Doc. 9-1 at 611. On January 11, 2019, the Ohio Court of Appeals denied reconsideration.  ECF Doc. 9-1 at 621.

### 5.    Ohio Supreme Court Appeal

On January 14, 2019, Henderson filed a timely *pro se* appeal with the Ohio Supreme Court.  *See* ECF Doc. 9-1 at 627.  In his memorandum in support of jurisdiction, Henderson raised five propositions of law:

**Proposition of law No. 1**: The trial court violated Appellant's sixth and fourteenth Amendment rights of the U.S Constitution by allowing un-confronted testimonial evidence[.]

**Proposition of law No. 2**: The trial court committed prejudicial error by denying relief of prejudicial joinder[.]

**Proposition of law No. 3**: Appellant's conviction was against the manifest weight of evidence[.][2]

---

[2] Although Henderson phrases his proposition of law as about the manifest weight of the evidence, the body of his argument addresses the sufficiency of the evidence claim.  *See* ECF Doc. 9-1 at 639.

**Proposition of law No. 4**: Appellant was denied his right to a fast and speedy trial a violation of The sixth and fourteenth amendments of the U.S. Constitution[.]

**Proposition of law No. 5**: Multiple instances of error, combined, caused reversible error resulting In the denial of Appellant's right to due process as provided by the U.S. Constitution[.]

ECF Doc. 9-1 at 631.  On April 3, 2019, the Ohio Supreme Court declined to accept jurisdiction over the appeal.  ECF Doc. 9-1 at 642.

### 6.  Timely App. R. 26(B) Application to Reopen

On February 8, 2019, Henderson timely filed a *pro se* Rule 26(B) application to reopen his direct appeal in the Ohio Court of Appeals.  ECF Doc. 9-1 at 644.  In this filing, Henderson asserted ineffective assistance of appellate counsel for failing to raise the following errors:

1.  The appellant's rights to due process and fair trial under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution were violated by multiple instances of prosecutorial misconduct.  In the prosecutions closing arguments he placed his credibility on the line by vouching for the veracity of the witnesses.  Also he attacked the integrity of appellant's trial attorney by calling them "desperate".  The prosecutor implied to having knowledge of facts outside the record and made numerous improper prejudicial remarks.

2.  Appellants rights to due process and fair trial under the Fifth, Sixth, Fourteenth Amendments of the United States Constitution and Section 10 Article I Of the Ohio Constitution were violated when trial court overruled request for mistrial when a juror had unlawful contact with someone regarding this case during trial.
    During trial one of the jurors was approached by someone outside the court. He discussed it with the other jurors further tainting the jury.  They then reported it to the bailiffs.  After conducting interviews, some jurors indicated they were intimidated and not sure if they could be impartial.  A request for mistrial was asked for by the defense and denied.

ECF Doc. 9-1 at 645.

On April 29, 2019, the court of appeals denied Henderson's application because Henderson did not demonstrate that counsel acted unreasonably or that he was prejudiced by the

alleged errors.  *See* ECF Doc. 9-1 at 649-654.  Henderson did not appeal the court of appeal's decision to the Ohio Supreme Court.

## II.      **Current Federal Habeas Petition**

On April 3, 2019, Henderson filed his federal habeas petition, raising six claims for relief:

> [**GROUND ONE**]: Speedy Trial – This cause involves the Sixth Amendment of the United States Constitution[.]

> [**GROUND TWO**]: Prosecutorial Misconduct – This cause involves the rights to due process and fair trial under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution[.]

> [**GROUND THREE**]: Prejudicial Joinder – This cause involves the rights to due process and fair trial under the Fifth and Sixth Amendment of the United States Constitution[.]

> [**GROUND FOUR**]: Sufficiency – Failure to adduce sufficient evidence violates the Sixth Amendment as it applies through the Fourteenth Amendments of the United States Constitution[.]

> [**GROUND FIVE**]: Confrontations Clause/Forfeiture by Wrongdoing – This cause involves the Fifth and Sixth Amendment of the United States Constitution; Right to confront accusor[.]

## III.     **Analysis**

### B.       **Procedural Default**

Warden Phillips contends that Henderson's Ground Two claim is procedurally defaulted because he failed to raise the prosecutorial misconduct argument before the Ohio Supreme Court for review.  ECF Doc. 9 at 37-39.  Because other portions of Henderson's petition also raise questions of procedural default, I will address each of Henderson's claims.  *See Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (stating that a court may raise procedural default *sua sponte*, even if waived by the state).

### 1.    Applicable Standard

Before coming to federal court, a state habeas petitioner must give the state courts a

"*fair*" opportunity to act on his federal law claims.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844

(1999) (emphasis in original).  If the petitioner hasn't done so and has no legal mechanism by

which to do so now, the claim he failed to present is procedurally defaulted, which means this

court cannot act on the claim either.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996);

*Williams v. Anderson*, 460 F.3d 789, 809 (6h Cir. 2006).  For a claim to have been fairly

presented, the factual and legal basis of the claim asserted by the petitioner must have raised at

each and every stage of state review.  *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009);

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  And the petitioner must have presented

"his claim to the state courts as a federal constitutional issue – not merely as an issue arising

under state law."  *Williams*, 460 F.3d at 807 (quotation marks omitted).

Ohio post-conviction procedure is governed by Ohio Rev. Code § 2953.21.  An Ohio

criminal defendant must file his post-conviction motion within 365 days after: (1) the date on

which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of

conviction; or (2) the date on which the time to file a timely direct appeal expired, if the

defendant did not file a timely direct appeal.  Ohio Rev. Code § 2953.21(A)(2).

We must undertake a four-part test to determine whether we are precluded from

reviewing a petitioner's federal habeas claim due to a procedural default.  *Barton v. Warden, S.*

*Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (citing *Maupin v. Smith,* 785 F.2d 135

(6th Cir. 1986)).

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with
> the rule. . . . Second, the court must decide whether the state courts actually
> enforced the state procedural sanction. . . . Third, the court must decide whether

the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . [Fourth, o]nce the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was 'cause' for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138 (citations omitted).  In *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), the Supreme Court explicitly reaffirmed the requirement of *Murray v. Carrier* that "cause" under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him.  Notably, however, "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  However, in order for ineffective assistance claims to be sufficient cause to excuse a procedural default, the ineffective assistance claim must itself be fairly presented to the state court before it may be raised in a federal habeas case.  *Id*. at 489.

Even if not subject to excuse because of demonstrated cause and prejudice, a federal habeas court can consider a defaulted claim in order to correct a fundamental miscarriage of justice.  *See Smith v. Warden, Toledo Corr. Inst.,* 780 F. App'x 208, 220-21 (6th Cir. 2019) (explaining that a "fundamental miscarriage of justice" requires the petitioner to show that his claim is based on new evidence that would reasonably have led jurors to conclude that he was actually innocent).

### 2. Analysis of Henderson's Claims for Relief

#### 1. Ground Two Claim

I will analyze the alleged procedural default of Henderson's claims out of the order in which he has presented them.  Henderson did not raise his current Ground Two claim in the Ohio

Court of Appeals upon direct appeal following his sentencing.  *See* ECF Doc. 9-1 at 513-536.
He did assert a claim of ineffective assistance of appellate counsel for the non-assertion of the
claim – as to the state's statements during closing argument (but not the state's statements to the
press) – in his Rule 26(B) application to reopen that appeal.  *See* ECF Doc. 9-1 at 644-647.
However, Henderson did not seek Ohio Supreme Court review of his Ground Two claim.
Moreover, a claim for ineffective assistance of counsel does not preserve the underlying
constitutional claim.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012)
("[e]xhaustion of this [trial counsel ineffective-assistance] claim does not similarly exhaust the
underlying substantive claim . . . .").  Thus, the Ground Two claim is procedurally defaulted
because it was never fairly presented to the Ohio courts, and Henderson's time to assert that
claim has long been expired.  *See* Ohio Rev. Code § 2953.21(A)(2); *Wagner*, 581 F.3d at 418.
Henderson has not offered any cause and prejudice argument to excuse his default of the Ground
Two claim despite the procedural default in order to avoid a fundamental miscarriage of
injustice.  *See* ECF Doc. 1-2.  Thus, Henderson's Ground Two claim should be dismissed as
procedurally defaulted.  Nevertheless, to be of the most service to the Court, I will address the
merits of the claim below.

### 2.  Ground One and Ground Five Claims

Henderson presented his Ground One and Ground Five claims to the Ohio Court of
Appeals in his initial direct appeal.  *See* ECF Doc. 9-1 at 525-528, 532-533.  Moreover, he
sought review by the Ohio Supreme Court of those claims.  *See* ECF Doc. 9-1 at 637, 640.  As a
result, Henderson's Ground One and Ground Five claims are not procedurally defaulted and can
be reviewed on their merits.

### 3.  Ground Three and Ground Four Claim

Henderson presented portions of his Ground Three and Ground Four claims to the Ohio Court of Appeals in his direct appeal.  Specifically, as to Ground Three, he argued on direct appeal that the trial court erred in joining his and Austin's trials because of the prejudice caused to his case by statements made by Austin to a fellow inmate while in custody.  *See* ECF Doc. 9-1 at 528-530.  On the denial of his appeal, Henderson also presented this argument in his motion for jurisdiction before the Ohio Supreme Court.  *See* ECF Doc. 9-1 at 638-639.  In his instant petition, however, Henderson adds that prejudice from the joinder also stemmed from statements made by Adrian Henderson.  *See* ECF Doc. 1-2 at 7-9.  This assertion was never presented to the Ohio Court of Appeals or the Ohio Supreme Court.

Similarly, as to Henderson's Ground Four sufficiency claim, Henderson argued on direct appeal to the Ohio Court of Appeals that there was insufficient evidence of his involvement with the murders for his "murder-by-complicity" convictions to stand.  *See* ECF Doc. 9-1 at 530-532.  On the denial of his appeal, Henderson also raised this contention to the Ohio Supreme Court in seeking review.  *See* ECF Doc. 9-1 at 639.  Importantly, however, Henderson's petition now also challenges the sufficiency of his second superseding indictment as to the aggravated murder charges for Slade and McCullough.  *See* ECF Doc. 1-2 at 10-11.  Henderson never raised this claim in the Ohio Court of Appeals or the Ohio Supreme Court.

The time for Henderson to raise these two claims before the Ohio Court of Appeals has long since expired.  *See* Ohio Rev. Code § 2953.21(A)(2); *Wagner*, 581 F.3d at 418.  Further, Henderson has not offered any cause and prejudice argument to excuse his default of the claims, despite the procedural default, and has not offered any evidence to support a fundamental miscarriage of injustice argument.  Thus, Henderson's Ground Three claim is procedurally

defaulted as to his argument that Adrian's statements about Austin resulted in a prejudicial joinder of his and Austin's trials and Henderson's Ground Four claim is procedurally defaulted as to his argument that the second superseding indictment was deficient as to the charges for the aggravated murders of Slade and McCullough.

### C.    Merits

I will analyze the merits of Henderson's claims in a different order than he presented them.

#### 1.    AEDPA Deference

Because the state court adjudicated all but Henderson's Ground Two claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits a federal court to grant relief only if that decision: (i) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (ii) was based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d).  "Unreasonable" doesn't simply mean that the state court got it wrong.  *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1101 (6th Cir. 2022).  Only if no "fairminded jurist" could agree with the state court may we grant relief.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

#### 2.    Ground Five: Confrontation Clause – Forfeiture by Wrongdoing

In his Ground Five claim, Henderson argues that the trial court erred in applying the forfeiture-by-wrongdoing exception to the Confrontation Clause to allow the admission of testimonial statements of Adrian Henderson. ECF Doc. 1-2 at 12-14.  He argues that the evidence supporting the trial court's finding that he procured Adrian's unavailability to testify at trial was based on hearsay and testimony from non-credible witnesses.  ECF Doc. 1-2 at 12-14.

21

The Warden contends that the trial court did not err because there was a preponderance of evidence that Henderson was involved with procuring Adrian Henderson's unavailability. ECF Doc. 9 at 62-64.

### a. Admissibility Hearing

The Ohio Court of Appeals summarized the evidence presented at the trial court's hearing on the admissibility of the co-conspirators' statements as follows:

> {¶ 26} At the admissibility hearing, there was a discussion of issues with witness security and the resulting sealing of various parts of the record. One witness (the girlfriend of Moorer) had been killed in 2013 and another witness (the brother of the witness at issue) survived a shooting. The state asked the trial court to listen to the statement of a person who said the girlfriend was killed on behalf of the defendants after her name was viewed on a witness list. A codefendant whose case was severed had her bond revoked after her attorney left her with a counsel-only file and she contacted a witness. In fact, Hayes (a complicitor in the Christian murder) was alleged to have been killed because he was talking about the murder.

> {¶ 27} A police officer, a detective, and an officer assigned to the U.S. Marshal's Task Force told the court how they searched for the witness. There was evidence the witness had been cooperative with the investigation at the time of the initial statement and in the years thereafter. One week prior to the admissibility hearing, he attended a meeting to prepare for his testimony in this trial. He met with the prosecutors at the parole office to protect himself as he feared he would be spotted at the courthouse and it would be known he was about to testify in this trial. Notably, this witness had information on Appellant, Austin, and Colvin (not the other jointly indicted individuals). However, the witness was informed Colvin was in the process of pleading guilty; Colvin's trial had been severed from this trial in any event, and he was not being tried at the time of the meeting.

> {¶ 28} The witness's parole officer testified the witness revealed (at the meeting about the trial of Appellant and Austin) that the defendants made multiple threats against him and his family. When he was reminded the defendants were incarcerated, he responded, "You still don't understand. They have people out there." The parole officer took this to mean the defendants had people they could direct to carry out the threats. A prosecutor's testimony confirmed the contents of this conversation with the witness. Based on representations at the Thursday meeting, the witness was still cooperative and planning to testify the next week.

> {¶ 29} The other prosecutor, who was also present at the meeting, texted the witness the next week to remind him he had to be in court the next day. He

received a response text from the witness saying,  "They say if I go they're going to kill my family, so what do I do? I should kill myself."  A subsequent text included the statements: "Not running from you. They going to kill my family." The prosecutor noted these disclosures occurred after opening statements, which was the first time the information in the sealed (counsel-only) witness list was released.  The prosecutor also asked the sheriff's office to prepare the video from the courtroom to show the defendants signaled to spectators.

{¶ 30}  A police officer looking for the absent witness testified the witness's mother, step-father, and sister all informed him the witness was afraid to testify at this trial against these defendants for fear of retribution against him and his family.  The step-father expressed the threats were being voiced by the defendants' mother.  The maternal grandmother of the witness's young child advised the officer there was "a sincere fear for his safety and the safety of his family."

{¶ 31}  A detective testified he was informed by the witness's sister that the witness would not be testifying at the trial against these two defendants as there is a "$10,000 hit" on him and "[t]hey want to try to kill him."  An officer with the marshal's task force testified he was told by the witness's friend that the witness was afraid he would be killed if he testified.  Also, the maternal uncle of the witness's child told the officer the witness and his family were "receiving threats that if the witness testified in this trial, he would be harmed."

*Henderson*, 2018-Ohio-5124, ¶¶ 26-31 (internal citations omitted); ECF Doc. 9-1 at 588-589.

### b.    Analysis

The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  This procedural guarantee commands that defendants be provided the opportunity to test the reliability of evidence "'in the crucible of cross-examination.'"  *Haliym v. Mitchell*, 492 F.3d 680, 710 (6th Cir. 2007) (quoting *Crawford v. Washington*, 541 U.S. 36, 62 (2004)).  In *Crawford*, the Supreme Court held that the Confrontation Clause precludes courts from admitting "testimonial statements" by a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity to cross-examine him.  *Crawford*, 541 U.S. at 59-60, 68-69.  When a statement is

"nontestimonial," however, the constitution "afford[s] the States flexibility in their development of hearsay law."  *Id.* at 68.  The Supreme Court declined to provide a comprehensive definition of "testimonial," but stated that it applied at a minimum to prior testimony at a preliminary hearing, before a grand jury, at a formal trial, and in police interrogations.  *Id.*

Even when a declarant's statements are testimonial, however, a defendant cannot invoke the Confrontation Clause when it is forfeited by wrongdoing, that is when the statements are made by a witness "who was detained or kept away by the means or procurement of the defendant."  *See Giles v. California*, 554 U.S. 353, 359 (2008).  The doctrine applies "only when the defendant engaged in conduct *designed* to prevent the witness from testifying."  *Id.*  Put more succinctly, so long as the defendant's designs may be perpetrated by those acting on his behalf. *See Rice v. Marshall*, 709 F.2d 1100, 1104 (6th Cir. 1983) (finding it reasonable for the trial court to conclude the witness was intimidated into silence by the defendant, who was an enforcer for his gang, or by his "functionaries."); *see also United States v. Pratt*, 915 F.3d 266, 275 (4th Cir. 2019) (noting that under the 'forfeiture by wrongdoing exception, "a district court may admit hearsay statements offered against a party that wrongfully caused "or acquiesced in wrongfully causing" the declarant's unavailability" (quoting Fed. R. Evid. 804(b)(6)); *United States v. Gurrola*, 898 F.3d 524, 534 (5th Cir. 2018) (same); *Beckett v. Ford*, 384 F. App'x 435, 447 (6th Cir. 2010) (same).

The Sixth Circuit has held that:

> The proponent of the hearsay statement has the burden of persuasion of showing procurement [of the unavailability] by a preponderance, but once evidence is produced that demonstrates good reason to believe the defendant has interfered with the witness, adverse inferences may be drawn from the failure of the defense to offer credible evidence to the contrary.

*Beckett*, 384 F. App'x at 448 (quoting *Steele v. Taylor*, 684 F.2d 1193, 1202 (6th Cir. 1982)).

The Ohio Court of Appeals' denial of Henderson's Ground Five claim was neither contrary to, nor an unreasonable application of, *Giles*.  Henderson does not argue, nor does the Warden contest, that Adrian's statements to police during questioning were testimonial in nature. *See United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) (explaining that whether statements are testimonial depends on "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." (Internal quotation marks omitted)).

Thus, the question becomes whether the trial court properly applied the forfeiture by wrongdoing exception.  And the Ohio Court of Appeals' denial of Henderson's Ground Five claim was neither contrary to, nor an unreasonable application of, *Giles*.  28 U.S.C. § 2254(d)(1). The Ohio Court of Appeals identified the applicable *Giles* standards.  *See* ECF Doc. 9-1 at 585-590.  Or, as when articulating the burden of proof carried by the state, it cited state law that was consistent with the federal standard.  *Compare State v. Hand*, 2006-Ohio-18, ¶¶ 84-86, 90, *with Beckett*, 384 F. App'x at 448; ECF Doc. 9-1 at 586.  Its analysis relied on these standards in evaluating the evidence presented.  *See* ECF Doc. 9-1 at 585-590.  Consequently, the Ohio Court of Appeals' reasoning was not contrary to federal law.  28 U.S.C. § 2254(d).

Nor did the Ohio Court of Appeals' denial of Henderson's Confrontation Clause claim rest upon an unreasonable interpretation of the facts.  28 U.S.C. § 2254(d).  The Ohio Court of Appeals indicated that it considered (i) evidence of other witnesses' whose safety had been threatened during the proceedings; (ii) the evidence of Hayes's own murder being due to his discussion of the Christian murder; (iii) testimony from law enforcement who had searched for Adrian; (iv) Adrian's statements to prosecutors that he feared he would be spotted at the courthouse and he and his family had been threatened; (v) texts from a prosecutor to Adrian and

his responses that included "They say if I go they're going to kill my family" and "Not running from you.  They going to kill my family" both of which happened after opening statements; (vi) video of defendants signaling spectators in the courtroom; and (vii) testimony from a detective indicating that Adrian's family and friends all told him Adrian was afraid to testify for fear of retribution against himself or his family.  ECF Doc. 9-1 at 588-589.

Although the record of the admissibility hearing was sealed and not provided, it is ultimately unnecessary because Henderson does not challenge *what* was presented at the admissibility hearing; rather, he challenges the weight given to that evidence.  As such, all of the above-referenced evidence is not contested; and there is no clear and contrary evidence to the trial court's findings, and the state trial court's credibility determinations must stand.  *See Johnson v. Warren*, No. 20-1071, 2020 U.S. App. LEXIS 27852, at *6 (6th Cir. 2020) (unreported); *see also Brown v. Jaconsin*, 501 F. App'x 376, 377 (6th Cir. 2012) ("Factual determinations made by the state court, including credibility determinations in the context of a hearing on a motion to suppress a confession, are presumed correct.").  Consequently, on the record established by the Ohio Court of Appeals, reasonable jurists would debate that a preponderance of evidence was offered to support Henderson's involvement and the Ohio Court of Appeals properly rejected Henderson's Ground Five claim.  *See Harrington*, 562 U.S. at 102.

I therefore recommend that Henderson's Ground Five claim be DENIED as meritless.

### 3. Ground One: Speedy Trial

In his Ground One claim, Henderson argues that his speedy trial rights were violated as to his three counts of conviction – by the trial court's delay in ruling on his motion to sever his case from Austin's.  ECF Doc. 1-2 at 1-4.  He argues that the delay exceeded the 90-day speedy trial clock imposed under Ohio statutory law and prejudiced his case because, had he gone to trial

sooner, Adrian would have potentially been available to testify because he was in custody. ECF Doc. 1-2 at 2-4. The Warden contends that, to the extent Henderson's Ground One claim is based on Ohio law, it is noncognizable, and, to the extent based on federal law, the Ohio Court of Appeals reasonably determined no violation had occurred. ECF Doc. 9 at 35-37.

### a. Cognizability

Federal habeas relief is only available for *federal* constitutional violations. 28 U.S.C. § 2254(a). Thus, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A claim that alleges only errors of state law are cognizable only to the extent that the "error amounts to a fundamental miscarriage of justice or a violation of the right to due process." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

Henderson's "speedy trial violation" claim does not distinguish whether he is alleging a violation of his state statutory right to a speedy trial and/or a violation of his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution. *See* ECF Doc. 1-2 at 1-4. As a result, I will consider both. *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction.' The appropriate liberal construction requires active interpretation in some cases to construe a pro se petition 'to encompass any allegation stating federal relief.'" (citations omitted)). To the extent Henderson contends that his speedy trial rights under Ohio statutory law were violated, I recommend that the court find that the claim is not cognizable in a federal habeas corpus case and dismiss that portion of the claim. *See Phillips v. Scheitzer*, No. 3:18-CV-2556, 2020 U.S. Dist. LEXIS 254995, at *24-26 (N.D. Ohio Nov. 10, 2020) (collecting cases).

###### b.    State Court of Appeals' Analysis

To the extent Henderson's contentions relate to his rights under federal law, we begin our analysis with what the Ohio Court of Appeals said on the issue:

{¶ 54}  Appellant's fourth assignment of error alleges:

"[T]he government failed to bring Henderson to trial timely in violation of his Sixth and Fourteenth Amendment rights to speedy trial and under the deadline of R.C. 2945.73."

{¶ 55}  Pursuant to R.C. 2945.71(C)(2), the state must bring a felony defendant to trial within 270 days after his arrest.  "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).  With this triple-count provision and Appellant's incarceration in jail in lieu of bail on the pending charge, the state had 90 days during which to try this case.  Appellant was not arrested on the original indictment (April 11, 2013) or on the first superseding indictment (May 16, 2013) until December 7, 2013.  As Appellant pointed out below, his speedy trial time thus started on December 8, 2013 (the day after his arrest).  *See State v. Lawson*, 7th Dist. No. 12 MA 194, 2014-Ohio-879, ¶ 36 (the day of arrest is not counted).  His trial commenced on April 25, 2016.

{¶ 56}  Nevertheless, the speedy trial time is extended by periods covered in R.C. 2945.72(A)-(I).

[* * *]

{¶ 64}  Again, the clock began on the pertinent aggravated murder counts on December 8, 2013, the day after his arrest.  Appellant filed a request for discovery on December 17, 2013, at which point 10 days had run on the speedy trial clock. The speedy trial time is extended by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused * * *."  R.C. 2945.72(E).  It is well established that requests for discovery and motions for bills of particulars are tolling events under this division.  *Brown*, 2002-Ohio-7040 , at ¶¶ 18, 26.  The state provided some discovery the day of Appellant's request, including redacted detective notes.  On December 20, 2013, the state provided autopsy reports and filed a notice of compliance which provided the court with unredacted detective notes in order to rule on a discovery dispute.  The court advised it would issue a ruling by January 13, 2014 on the defendant's request for the court to conduct an in camera review of the unredacted detective notes to determine whether they should be disclosed. (12/30/13 J.E.).

{¶ 65}  In the meantime, on December 26, 2013, Appellant filed a motion requesting the appointment of co-counsel.  The court granted this motion in a January 6, 2014 judgment entry.  In addition, the court held a pretrial on December 30, 2013, where Appellant moved for a continuance of the jury trial previously set for January 6, 2014.  The speedy trial time is extended by "[t]he period of any continuance granted on the accused's own motion * * *." R.C. 2945.72(H).  See R.C. 2945.72(C) (any period of delay necessitated by the accused's lack of counsel).  In a December 30, 2013 judgment entry, the court granted Appellant a continuance and granted him leave until January 7, 2014 to file a motion on joinder and a motion regarding co-conspirators' statements.

{¶ 66}  On January 7, 2014, Appellant filed a motion to sever and a motion for a hearing to determine whether co-conspirators' declarations can be introduced. The state filed an opposition memorandum on January 13, 2014.  On that day, the court held a scheduled pretrial and issued an entry setting a motion hearing for March 28, 2014.  The court's entry noted speedy trial time was tolled due to Appellant's two motions.

{¶ 67}  On March 12, 2014, Appellant filed a motion to transcribe three video statements, which the court granted on March 17, 2014.  After the March 28 motion hearing, the court's entry said the speedy trial time remained tolled, granted Appellant leave to supplement the record upon obtaining a transcript of statements of a confidential informant, and ordered the state to provide certain statements to the court within 21 days.  The state filed notice of compliance on April 11, 2014.  In the meantime, the parties agreed to have more transcripts produced from statements. (4/3/2014 J.E.).

{¶ 68}  On May 1, 2014, the court severed Colvin's case from the case against Appellant and Austin, which in effect granted part of Appellant's severance motion.  A June 13, 2014 judgment entry memorializing a pretrial stated the jury trial was scheduled for September 8, 2014 by agreement of the parties.  It also stated the parties agreed the court would conduct an in camera review of detective notes at the next pretrial on July 18, 2014.

[* * *]

{¶ 72}  We return to outlining the events occurring around the time Appellant believes the clock should have been restarted due to the lack of ruling on his motions.  On June 30, 2014, Appellant requested an extension for filing a response to the state's notice of intent to use evidence; after the court granted an extension on July 7, 2014, Appellant asked for another extension and did not file his response until August 4, 2014, wherein he presented a motion in limine objecting to evidence.  In the meantime, on July 18, 2014, the court held the in camera inspection of the detective's notes as requested by the defense, and the court ordered the September 8 jury trial to be converted to a hearing on the admissibility of certain evidence.

29

{¶ 73}  The motion hearing scheduled for September 8, 2014 was continued due to a jury trial in a criminal case pending since 2009.  Speedy trial time is extended by division (H) not only by "the period of any continuance granted on the accused's own motion" but also by "the period of any reasonable continuance granted other than upon the accused's own motion * * *."  R.C. 2945.72(H).  In addition, the state's response to Appellant's motion in limine was filed on September 16, 2014.  The court then agreed to watch 15 DVDs in order to rule on the pending issues.  The court's September 19, 2014 entry stated defense counsel agreed that the motion and the resulting need for the court to review the videos tolled the speedy trial time.  "When the parties agree to a continuance, even if it is not on the motion of the defendant, the continuance is presumptively reasonable and there is no need to explain the reason for the continuance on the record." *State v. Kozic*, 7th Dist. No. 11 MA 160, 2014-Ohio-3788, ¶ 91.  In any event, the reason for the continuance was expressed and was reasonable.  *See* R.C. 2945.72(H).

{¶ 74}  A November 17, 2014 hearing date was continued by agreement due to a defendant's unavailability.  A pretrial was held on December 17, 2014, where the court explained its "monumental task" of listening to and reading all the statements pertinent to the in limine hearsay issue and the joinder issue; the court noted it was in the process of drafting its ruling.  At this hearing, Appellant's attorney agreed: "**we do agree that the filing of the motion and the court's consideration of those motions tolled the speedy trial period and we further agree that the time from today until the filing of your formal opinion is also tolled**."  (Emphasis added). (Tr. 7).

{¶ 75}  The court ruled on Appellant's evidentiary motion on January 23, 2015 and ruled on Appellant's severance motion on January 27, 2015.  Considering all of the foregoing events and agreements, the court's delay in ruling on the motions was not unreasonable, and Appellant's January 7, 2014 motions tolled the time through January 27, 2015.

[* * *]

{¶ 77}  After the court's January 27, 2015 ruling, speedy trial time began running and 15 days were added to the speedy trial clock which was previously at 10 days (for a total of 25 days).  At that point, Appellant filed a motion to voir dire witnesses on February 11, 2015.  As a direct result of Appellant's motion, the court continued the February 17, 2015 trial and specified that Appellant's motion was a tolling event.  The jury trial was rescheduled for June 1, 2015 by agreement of the parties, and the court overruled Appellant's motion to voir dire the witnesses on March 18, 2015, at the rescheduled pretrial.  In the meantime, the second superseding indictment was filed.  On the day the June 1 trial was to begin, the parties agreed to a continuance, and the case was set for a July 27, 2015

pretrial at Appellant's request. (6/3/2015). The time thus remained tolled upon this agreed continuance of trial.

{¶ 78} Before speedy trial time could begin running, Appellant's attorneys filed a notice of a conflict of interest on June 23, 2015. A hearing was held, and on June 26, 2015, the court relieved Appellant's attorneys. Pursuant to R.C. 2945.72(C), speedy trial time is tolled by: "Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law." Replacement counsel was appointed prior to the July 27, 2015 pretrial, but a different attorney was appointed at the pretrial; this was the attorney Appellant asked the court to appoint.

{¶ 79} The court's entry was signed by counsel and provided, "By agreement of the parties, trial is set for January 19, 2016, at 8:30 a.m. Due to the amount of discovery and potential pleadings to be filed still, speedy trial time is tolled until trial." (Emphasis added). (7/27/2015 J.E.). It is not contested that this was an agreed continuance and/or a period of delay agreed to be necessitated by the appointment of new counsel. Time remained tolled after the appointment of new counsel through this trial date, and additional events kept the time tolled until trial.

{¶ 80} Before this new trial date, Appellant filed the aforementioned motion dismissing certain counts (containing the arguments about the superseding indictment); this was overruled in a February 16, 2016 judgment entry. Also before the scheduled trial, Appellant filed a January 7, 2016 notice informing the court that he concurred with the motion to continue filed by co-defendant Austin. The court granted the continuance, resetting the trial, by the agreement of the parties, to February 16, 2016. (1/11/2016 J.E.). Appellant jointly-requested a continuance of this trial date at the February 12, 2016 pretrial. The court granted the continuance and reset the trial for April 25, 2016, by agreement of the parties. (2/16/2016 J.E.). Trial did commence on that date.

[* * *]

{¶ 82} Appellant also briefly mentions the constitutional right to a speedy trial. A balancing test is used to analyze constitutional speedy trial claims, focusing on four factors: (1) the length of the delay; (2) the reason for the delay; (3) how and when the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice from the delay. *Barker*, 407 U.S. at 530-532; *State v. Taylor*, 98 Ohio St. 3d 27, 2002-Ohio-7017, P 38-39, 781 N.E.2d 72. Appellant asserted his rights in a motion three weeks prior to trial; and made superseding indictment arguments three months earlier. The length of delay between Appellant's arrest and the commencement of trial was less than 2.5 years. The reasons for the delay and various tolling events were discussed supra. Appellant has not demonstrated prejudice from the delay. As the balancing test

does not weigh in Appellant's favor, he has not established his constitutional right to a speedy trial was violated. This assignment of error is overruled.

*Henderson*, 2018-Ohio-5124, ¶¶ 54-82; ECF Doc. 9-1 at 596-605.

### c.    Law & Analysis

The Sixth Amendment guarantees the right to a speedy trial.  U.S. Const. amend VI; *Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967) (enforcing the Sixth Amendment against the states under the Fourteenth Amendment).  Whether that right has been violated isn't measured against specific days or months.  *Barker v. Wingo*, 407 U.S. 514, 523 (1972).  Instead, the Supreme Court prescribed in *Barker* a balancing test, under which courts consider: (i) the length of the delay; (ii) the reasons for the delay; (iii) the defendant's assertion of his right; and (iv) prejudice to the defendant.  *Id.* at 530.  The "triggering mechanism" for the *Barker* test is length of the delay.  *Id.*  Unless the delay exceeds the point at which it becomes presumptively prejudicial (one year starting from the earlier of the arrest or indictment), the court need not inquire into the other factors.  *Id.*; *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2003).  None of the factors on its own is dispositive.  *Barker*, 407 U.S. at 523.  "Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  *Id.*

Ohio has implemented the Sixth Amendment guarantee to a speedy trial by statute, Ohio Rev. Code § 2945.71 et seq.  *State v. O'Brien*, 34 Ohio St. 3d 7, 9 (Ohio 1987).  "[A]ny time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*."  *Brown v. Bobby*, 656 F.3d 325, 331 (6th Cir. 2011).

The Ohio Court of Appeals' denial of Henderson's Ground One claim based on federal law, was neither contrary to, not an unreasonable application of, *Barker*.  28 U.S.C. § 2254(d)(1).  The Ohio Court of Appeals acknowledged the standard articulated under *Barker* and expressly

applied those factors in determining that Henderson's speedy trial rights were not violated. Moreover, as the Sixth Circuit held in *Brown*, a state's consideration of the § 2945.72 factors is consistent with *Barker*, such that the Ohio Court of Appeals' decision was not contrary to clearly established law, as established by the Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown*, 656 F.3d at 330-332; *see also Hill v. Sheldon*, No. 1:11-CV-2603, 2014 U.S. Dist. LEXIS 22001, at *5-6 (N.D. Ohio Feb. 21, 2014) (finding that a state court decision was not an unreasonable application of *Barker* when applied through Ohio's speedy trial statute).

Further, the Ohio Court of Appeals' decision did not involve an unreasonable interpretation of the facts. 28 U.S.C. § 2254(d). The Ohio Court of Appeals determined that Henderson's speedy trial rights were not violated because his speedy trial clock was tolled by his own motions, with his agreement, or pursuant to the statutory factors, such as the need to appoint counsel or for discovery. *See* ECF Doc. 9-1 at 605. Consistent with the *Barker* factors, the Ohio Court of Appeals (i) identified that the length of delay was less than 2.5 years; (ii) provided an extensive explanation of the case's proceedings and development over those 2.5 years, noting that the majority were at or with the defendant's consent; (iii) identified that Henderson was not prejudiced by the delay; and (iv) noted that Henderson asserted his speedy trial right as to his original indictment three weeks prior to trial and, as to the superseding indictment, only three months earlier. ECF Doc. 9-1 at 605. The court reasonably determined that the factors weighed against Henderson, given that he had over two years in which he could have asserted his speedy trial rights, but instead waited until, at best, about four months before trial; the delay was largely due to Henderson's own motions; and he did not identify any prejudice from the delay. *See Harrington*, 562 U.S. at 102.

And the record corroborates the Ohio Court of Appeals' finding that Henderson's motions or agreement resulted in the majority of the delay.  *See, e.g.*, ECF Doc. 9-1 at 76, 79, 119-121, 123-124, 145-146, 180, 225, 395.  As the Ohio Court of Appeals observed, Henderson did not assert his speedy trial rights even as to his superseding indictment until he had been in custody for 745 days, and he had been in custody for an additional 100 days when he challenged the delay attributable to his motion to sever.  *See* ECF Doc. 9-1 at 254, 464.  Nor did Henderson assert any actual prejudice from the delay in either motion.  Henderson asserts *for the first time* in his habeas petition that he was prejudiced due to Adrian's unavailability to testify at trial, which he alleged could have been avoided had he been brought to trial sooner because Adrian was in custody.  *See* ECF Doc. 1-2 at 4.

However, as discussed above, the Ohio Court of Appeals did not err in reasoning that Henderson was responsible for Adrian's unavailability.  To find that Henderson was prejudiced due to the change in Adrian's availability would be to permit Henderson create his own prejudice and, essentially, to have concocted his own speedy trial violation.  *See United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 565 (1983) ("[the *Barker*] elements are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case.").

Accordingly, because the Ohio Court of Appeals' conclusion that Henderson's speedy trial rights were not violated was neither contrary to nor an unreasonable application of federal law, I recommend that Henderson's Ground One claim be denied for lack of merit.

### 4.    Ground Two: Prosecutorial Misconduct

In his Ground Two claim, Henderson asserts that, in a news conference, the lead prosecuting attorney called Henderson the "worst of the worst," which the prosecutor knew or

should have known would be disseminated to the public and had a substantial likelihood of prejudicing the jury pool. ECF Doc. 1-2 at 4-5.  Further, Henderson argues that during the prosecution's closing argument, the prosecutor: (i) attacked the integrity of his trial counsel by calling him "desperate," and (ii) implied knowledge of facts outside the record bolstering the credibility of a witness by saying that various prosecution witnesses were telling the truth. ECF Doc. 1-2 at 5-6.  Henderson makes additional arguments regarding prosecution witnesses, but does not connect them to any statements by the prosecutor, and contends that the trial court erred in telling the jury they needed to rely on their memories, when responding to a jury request to review Adrian's videotaped statement. ECF Doc. 1-2 at 7.

"[F]or habeas relief to be granted on the basis of a prosecutor's comments, the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Wilson v. Bell*, 368 F. App'x 627, 632 (6th Cir. 2010) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks and alterations omitted)).  The Sixth Circuit has adopted a two-step analysis to determine whether prosecutorial misconduct violates a defendant's due process rights, which asks: (1) "whether the prosecutor's conduct was improper," and, if so, (2) "whether the misconduct was flagrant." *Id.* at 633.

The court must apply the harmless error standard in determining whether prosecutorial misconduct mandates habeas relief. *Macias v. Makowski*, 291 F.3d 447, 451 (6th Cir. 2002). We must ask "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Furthermore, the harmless error standard also applies to claims regarding jury instructions.  "To warrant habeas relief, jury instructions must not only have been

erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Austin v. Bell*, 126 F.3d 843, 846 (6th Cir. 1997).

Henderson identifies the prosecutor's statements (i) to the press upon issuing the second superseding indictment that Henderson was "the worst of the worst," (ii) that defense counsel was "desperate" (which Henderson understands as an attack on defense counsel's integrity), and (iii) that various prosecution witnesses were telling the truth. ECF Doc. 1-2 at 4-6. Additionally, Henderson argues that the prosecutor improperly stated:

> So let's think about it. If we would be concocting a case or manufacturing a case, how difficult would it have been for use to switch fingerprints? Pretty easy. Right? We could have done that. We could have planted evidence right? We could have simply said. Hey, when these guys got arrested they said year I know why you're here, I killed all those people. Could have said that right? I mean let's face it if we're going to lie lets really lie.

*See* ECF Doc. 1-2 at 6; ECF Doc. 9-2 at 1651.

Although, as noted above, Henderson's Ground Two claim should be dismissed because it was procedurally defaulted, I will analyze the merits of Henderson's Ground Two claim. Ultimately, Henderson's Ground Two claim lacks merit because, even assuming his factual allegations are true, any resulting prejudice was not so substantial as to constitute a due process violation which would warrant habeas relief. 28 U.S.C. § 2254(d). Henderson has not alleged any prejudice stemming from the trial court's response to the jury's question to review Adrian's videotaped testimony and, thus, it cannot be said to have rendered the entire trial "fundamentally unfair." *See Austin*, 126 F.3d at 846. Further, Henderson has not provided any support for his allegation that the prosecutor made a statement to the press aside from his own unsubstantiated statements. And even such statements were made, the trial court instructed the jury that the evidence was what it had heard during the trial and, prior to the opening statements, instructed it

to ignore anything they heard about the case from the media, and we must assume that it followed that instruction.  *See* ECF Doc. 9-2 at 368, 1672-1673.

Similarly, the Ohio Court of Appeals' denial of Henderson's Ground Two claim based on the prosecutor's statements during closing argument was not contrary to, nor an unreasonable application of, federal law.  Although the Ohio Court of Appeals cited state case law, the cited cases were consistent with federal standards for evaluating claims of prosecutorial misconduct during closing arguments.  *Compare State v. Lott*, 51 Ohio St.3d 160, 165 (1990), *with United States v. Williamson*, 656 F. App'x 175, 189 (6th Cir. 2016) ("[W]e must determine whether the impropriety was sufficiently flagrant to warrant reversal"); ECF Doc. 9-1 at 650-651.  It also considered the challenges statements in context.  *Compare State v. Treesh*, 90 Ohio St.3d 460, 466 (2001) *with United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context.").  And the Ohio Court of Appeals applied these standards to distinguish the prosecutor's reference to a desperate *strategy* rather than defense counsel's desperation or other statements made in rebuttal when the prosecutor contested a perceived defense theory.  ECF Doc. 9-1 at 651-652.

The Ohio Court of Appeals' denial was also not an unreasonable interpretation of the facts.  28 U.S.C. § 2254(d).  The prosecutor's statements concerning prosecution witnesses did not imply facts outside the record, but were made within the context of demonstrating how each witness's testimony had been corroborated by other evidence.  *See, e.g.*, ECF Doc. 9-2 at 1575-1576 ("Adrian Henderson is further corroborated by the ballistic evidence in this case. . . . There were no shell casings found at the scene.  That Corroborates it.  Ladies and gentlemen, Adrian Henderson is telling the truth.").  The Ohio Court of Appeals also correctly identified that

37

the prosecutor's reference to the defense as "desperate" was about its strategy – not defense counsel personally. *See* ECF Doc. 9-2 at 1591 ("And I don't know if you caught what I caught on cross examination, basically the desperation. Basically the desperation from the defense that they couldn't attach his account."). The remainder of Henderson's challenged statements arose from the prosecutor's rebuttal argument in response to arguments made by the defense counsel. *See, e.g.*, ECF Doc. 9-2 at 1648-1651. As such, fair-minded jurists could differ with the Ohio Court of Appeals' finding (to the extent it reviewed Henderson's claim) that such alleged errors did not warrant relief. *See Harrington*, 562 U.S. at 102.

Thus, although I recommend that Henderson's Ground Two claim be dismissed as procedurally defaulted, should it be considered on the merits, I would recommend that it be denied as meritless.

### 5.    Ground Three: Prejudicial Joinder

In his Ground Three claim, Henderson argues that the trial court erred when it declined to sever his case from Austin's, asserting that statements by Adrian and by Austin to an inmate were prejudicial against his case. ECF Doc. 1-2 at 7-9. The Warden contends that Henderson's Ground Three claim is without merit because Henderson has not shown that the failure to sever the cases constituted a due process violation. ECF Doc. 9 at 44-46.

Joint trials are favored in circumstances when defendants are jointly indicted because it promotes efficiency and avoids the potential for inconsistent verdicts. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993). Although improper joinder, in itself, does not violate the Constitution, *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986), misjoinder would rise to the level of a constitutional violation if it results in prejudice "so great as to deny a defendant his Fifth Amendment right to a fair trial." *Rodriguez-Baron v. Hall*, No. 4:09-CV-1594, 2010 U.S.

Dist. LEXIS 84671, at *21 (N.D. Ohio July 27, 2010) (citing *Lane*, 474 U.S. at 446 n.8).  In

other words, the prejudice must have a "substantial and injurious effect or influence on

determining the jury's verdict."  *Lane*, 474 U.S. at 449.

The Ohio Court of Appeals' denial of Henderson's Ground Three claim was neither

contrary to, nor an unreasonable application of, federal law.  28 U.S.C. § 2254(d)(1).  The state

court cited both state and federal law to articulate the federal standard for determining whether

joinder resulted in a Fifth Amendment violation due to a potential Confrontation Clause issue.

*See State v. Carter*, 2017-Ohio-7501, ¶¶ 36-39 (citing *Ohio v. Clark*, 135 S. Ct. 2173, 2181

(2015) and *Bruton*, 391 U.S. at 137).  Moreover, citing *Zafiro*, the Ohio Court of Appeals noted

the heightened risk of prejudice stemming from defendants of differing degrees of culpability.

*See* ECF Doc. 9-1 at 592.  As a result, the Ohio Court of Appeals' legal reasoning was consistent

with federal law.

The Ohio Court of Appeals' decision also did not involve an unreasonable application of

federal law or an unreasonable determination of the facts.  As the Ohio Court of Appeals noted,

based on *Carter*, "if the out-of-court statement of a non-testifying codefendant is not testimonial,

then *Bruton* has no application because the [C]onfrontation [C]lause has no application."

*Carter¸* 2017-Ohio-7501, ¶ 39.  The statements from Austin to his fellow inmate were not

testimonial and, thus, there was no *Bruton* concern and no possible violation of the Confrontation

Clause by the admission of those statements.  *See* ECF Doc. 9-1 at 591.  Additionally, the Ohio

Court of Appeals considered that Henderson and Austin were brothers, members of the same

organization, had similar roles in the organization, were charged with the same four aggravated

murders; and Henderson and Austin did not raise mutually antagonistic or irreconcilable

defenses.  ECF Doc. 9-1 at 592.  Further, it noted that the evidence at trial was not complex, the

39

evidence was simple to differentiate as to each defendant's role, and, even though Austin had additional charges, he was acquitted on those counts which undermined any prejudice to Henderson that could have stemmed from those charges.  ECF Doc. 9-1 at 592-593.  Lastly, the jury was instructed to consider the evidence against each defendant separately, which we must assume they did.  *See Jones v. United States*, 527 U.S. 373, 394 (1999) ("The jurors are presumed to have followed these instructions"); ECF Doc. 9-2 at 1708-1709.  Even if the court were to consider the claimed prejudice arising from Adrian's statements, Henderson has not shown, in light of the trial court's consideration of these circumstances, that his joint trial with Austin denied him a fair trial.  *See Rodriguez-Baron*, 2010 U.S. Dist. LEXIS 84671, at *21.  Taken together, the state court's determination that the joinder of Henderson's and Austin's trials was not so substantially prejudicial that severance was necessary was not contrary to or an unreasonable application of federal law.

I recommend that Henderson's Ground Three claim be denied as meritless.

### 6.   Ground Four: Sufficiency of the Evidence

In his Ground Four claim, Henderson argues that there was insufficient evidence to convict him of the aggravated murders of Christian and Hayes because there was only one witness, Adrian, to connect him to the murders, and Adrian never saw him do anything related to the murders, had a motive to lie, and other evidence was contradictory as to whether he was present or not.  ECF Doc. 1-2 at 10-11.  Further, he contends that there was insufficient evidence of his involvement with the Slade and McCullough murders to indict him on those charges, asserting it was mere speculation.  ECF Doc. 1-2 at 26-27.  The Warden argues that Henderson has waived any argument challenging his indictment and there was sufficient evidence to convict him of the Christian and Hayes murders.  ECF Doc. 9 at 52-54.

In reviewing an insufficient evidence claim, federal courts apply the *Jackson v. Virginia* standard: "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979) (emphasis in original).  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.  And in applying this standard, courts are mindful that "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

Ohio's aggravated murder statute provides: "[n]o person shall purposely, and with prior calculation and design, cause the death of another." Ohio Rev. Code § 2903.01(A) (2016).  A person who participates in a crime "and the manner of its accomplishment, would be reasonably likely to produce death" may be liable under aiding and abetting liability under Ohio's aggravated murder statute. *Cf. State v. Lockett*, 49 Ohio St.2d 48 (1976) (paragraph 4 of syllabus) (affirming conviction of getaway driver convicted of aggravated murder where co-defendants shot and killed pawnbroker during the course of a robbery), *overruled on other grounds by Lockett v. Ohio*, 438 U.S. 586 (1978); *see also* Ohio Rev. Code § 2923.03 (2016) (providing that one who, with the requisite culpability for the commission of a principal offense, solicits or procures another to commit the offense "shall be prosecuted and punished as if he were a principal offender," and that "[a] charge of complicity may be stated in the terms of this section, or in terms of the principal offense").  Aiding and abetting liability may also be inferred from the circumstances surrounding the crime.  *See Brown v. Konteh*, 567 F.3d 191, 206 (6th Cir. 2009) (citing Ohio state law).

A person convicted of aggravated murder is subject to a sentence of death or life imprisonment.  Ohio Rev. Code §§ 2903.01(F) (2016), 2929.02(A) (2016).  A defendant is subject to a mandatory, consecutive three-year prison term if he "had a firearm on or about the offender's person or under the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."  Ohio Rev. Code § 2941.145(A) (2016); *see also* Ohio Rev. Code § 2929.14(B)(1)(a)(ii) (2016).

The Ohio Court of Appeals' denial of Henderson's Ground Four claim was neither contrary to, nor an unreasonable application of, *Jackson*.  28 U.S.C. § 2254(d)(1).  Although the court cited state law to articulate the standard for evaluating sufficiency-of-the-evidence claims, the standard that it applied was consistent with *Jackson*.  *Compare* 443 U.S. at 319, *with* ECF Doc. 9-1 at 594 (citing *State v. Getzy*, 84 Ohio St.3d 180, 193, 1998-Ohio-533 (1998)); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that a state court doesn't need to cite the applicable federal decision but need only apply a rule consistent with that opinion).

The Ohio Court of Appeals' decision also did not involve an unreasonable application of *Jackson* or an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  The evidence the court cited and the trial evidence as a whole was evidence from which a rational trier of fact could conclude that Henderson aided and abetted the murders of Hayes and Christian.  *See* Ohio Rev. Code § 2903.01(A).  Evidence from which a rational trier of fact could find Henderson's liability to the same extent as a principle included: (i) his arrival at the unavailable witness's house with his brother, Colvin, and Hayes, (ECF Doc. 9-1 at 330; ECF Doc. 9-2 at 1122-1123); (ii) testimony that he worked as an enforcer or shooter in Colvin's drug organization (ECF Doc. 9-2 at 466, 793-795, 803, 807-809, 1202, 1301-1302, 1311-1314, 1331); (iii) his presence

during the planning of Christian's shooting (ECF Doc. 9-1 at 330; ECF Doc. 9-2 at 1122-1123); (iv) his making statements on being presented with the plan to murder Christian that indicated his agreement (ECF Doc. 9-2 at 1123-1126); (v) his driving of Austin, Colvin, and Hayes to the crime scene (ECF Doc. 9-1 at 335; ECF Doc. 9-2 at 1125); (vi) the group returning and Austin announcing he shot a member of the Christian family (ECF Doc. 9-1 at 341, 343, 349-350; ECF Doc. 9-2 at 1125, 1127); (vii) Henderson and Austin planning to kill Hayes (ECF Doc. 9-1 at 362-363); (viii) the unavailable witness seeing Hayes, Austin, Henderson, and Colvin all driving away together (ECF Doc. 9-1 at 363-364); and (ix) Austin's statement he killed Hayes (ECF Doc. 9-1 at 363-369, 372).  Taken together, the state court's determination that a rational trier of fact could find that Henderson was complicit in Christian's and Hayes's deaths was not beyond any possibility of fair-minded disagreement.  *See Harrington*, 562 U.S. at 101.

Although I recommend the dismissal of Henderson's challenge to his superseding indictment on the basis of procedural default, if the court should reject that recommendation, Henderson's argument as to his superseding indictment would fail for lack of merit.  28 U.S.C. § 2254(d).  Henderson challenges the factual sufficiency for the aggravated murder charges of Slade and McCullough, but a court only reviews the validity of the indictment on its face.  *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. . . . This is not required by the Fifth Amendment.").  Thus, even if considered on the merits, I recommend that Henderson's challenge to the Slade and McCullough aggravated murder charges be denied for lack of merit.

I recommend that Henderson's Ground Four claim be denied for lack of merit.

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a certificate of appealability

("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a

substantial showing of the denial of a federal constitutional right.  *Cunningham v. Shoop*, 817 F.

App'x 223, 224 (6th Cir. 2020).  A petitioner satisfies this standard by demonstrating that

reasonable jurists "could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further."  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted);

*see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If the Court accepts my recommendations, Henderson will not be able to show that the

Court's rulings on his claims are debatable among jurists of reason because all of Henderson's

claims are procedurally defaulted or meritless.  Because of jurists of reason would not find

debatable that relief is unavailable on any of Henderson's claims, I recommend that no COA

issue in this case.

**V.      Recommendation**

Because Henderson's Ground Two and portions of his Ground Three and Ground Four

claims are procedurally defaulted, I recommend that those claims and arguments be

DISMISSED, and because the remainder of Henderson's claims lack merit, I recommend that

Henderson's claims be DENIED and his petition for writ of habeas corpus be DENIED.  I further

recommend that Henderson not be granted a COA.

Dated: November 29, 2022

Thomas M. Parker
United States Magistrate Judge

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report & recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, at *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878–79 (6th Cir. 2019).